IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

RICHARD PERNELL BURTON, JR.

CRIMINAL
NO. 15-474-3

## MEMORANDUM OPINION

**Schmehl, J.**  *s/JLS*                                              July 23, 2020

Before the Court are numerous *pro se* motions filed by Defendant Burton that seek compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) or a transfer to home confinement under the CARES Act. (Docket Nos. 164, 165, 167, 168, 172, 173, 175). The Government has filed a response, and Defendant's many motions are ready for decision.

**I.    STATEMENT OF FACTS**

Defendant Richard Pernell Burton, Jr. has continuously been subject to court supervision because of six federal and state criminal convictions, beginning in 1988 and continuing through 2015, including felony drug convictions. On September 30, 2015, a federal grand jury in the Eastern District of Pennsylvania returned an indictment charging Burton with criminal offenses to which he pled guilty on September 20, 2016. On March 4, 2019, Burton was sentenced. His total offense level under the advisory Sentencing Guidelines was 27, and his criminal history category was IV, thus producing an advisory sentencing range of 120 - 125 months, because of the 120-month mandatory minimum term of imprisonment. Accordingly, I imposed a sentence of 120 months' imprisonment,

which was at the bottom of the sentencing range. Burton is serving his sentence at FCI Allenwood with an anticipated release date of October 24, 2027. He has not committed any disciplinary infractions during his time in custody.

Burton's request for compassionate release is based upon the following medical conditions: diabetes, sleep apnea and use of a C-Pap machine for breathing, multiple nodules in a lung, a bad back with 2 herniated discs, 3 repaired hernia, hearing loss in the left ear, high cholesterol, high blood pressure, and post-traumatic stress disorder due to serving in the Libyan War and from years of incarceration. On March 24, 2020, the defendant submitted a request for compassionate release to the warden. That request was based on the following medical conditions: high blood pressure, diabetes, and diverticulitis, as well as the risk presented should the defendant contract COVID-19.

Thereafter, Burton filed a *pro se* motion in this Court seeking compassionate release, along with a request for appointment of counsel. I granted Burton's motion for appointment of counsel and appointed the Federal Defender's Office to represent him with regards to his compassionate release motion. The Federal Defenders reviewed the matter and declined representation of Burton. Burton then proceeded to file additional motions or letters on six separate occasions requesting the same relief due to the COVID-19 crisis. The Government responded to these motions, and they are now ripe for decision.

Along with the response to his motions, the Government also provided Burton's medical records from the past year from the Bureau of Prisons. The records reveal that Burton, who is 54 years old, presents with high blood pressure, diabetes, and diverticulitis. He is otherwise fully ambulatory and engages in all normal activities of

daily living. At his most recent checkup on April 10, 2020, Burton stated that he had no complaints and felt healthy, and the doctor's main concern was that he was not following dietary rules or being compliant with his medication. As for his diabetes, a note on March 19 stated, "since coming to prison in April 2019 he has lost 19 lbs. and his A1C has decreased from 11.7 to 8.8."

## II.     LEGAL AUTHORITY

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > > (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of

any other person or to the community, as provided in 18 U.S.C. § 3142(g)." In application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—
>
> > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > (ii) The defendant is—
> >
> > > (I)  suffering from a serious physical or medical condition,
> > >
> > > (II) suffering from a serious functional or cognitive impairment, or
> > >
> > > (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant
>
> > (i)    is at least 65 years old;
> >
> > (ii)   is experiencing a serious deterioration in physical or mental health because of the aging process; and

>> (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.— As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019); *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019).

Accordingly, if a defendant's medical condition is found to be a serious ailment, a court must then analyze the factors under section 3553(a) and the Sentencing Commission's policy statement. Section 3582(c)(1)(A) requires a court to consider the "factors set forth in section 3553(a) to the extent they are applicable" before a sentence may be reduced. These factors require a determination of whether the sentence served "reflect[s] the nature and circumstances of the offense and the history and characteristics of the defendant;" "reflect[s] the seriousness of the offense;" "promote[s] respect of the law;" and "afford[s] adequate deterrence to criminal conduct." The statute also instructs a court to consider the Sentencing Commission's policy statement, which allows a sentence

reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.

### III. DISCUSSION

Burton argues that his medical conditions present a serious ailment which results in an "extraordinary and compelling" reason for his release from incarceration. Accordingly, I will analyze his motions under section (A) of the Sentencing Guidelines policy statement set forth above.[1]

Burton asserts he faces a heightened risk of serious illness or death from COVID-19 because of his numerous medical conditions and that social distancing is impossible at the facility in which he is housed. The Government admits that Burton's diabetes presents a risk factor that can increase the risk of an adverse outcome from COVID-19, and that Burton may be less able to protect himself against an unfavorable outcome from the disease.[2] Further, Burton's hypertension is also recognized as a condition that could present an increased risk of an adverse outcome from COVID-19. Accordingly, Burton's diabetes and hypertension, if taken in isolation, may be a serious enough ailment to justify compassionate release.

However, I find Burton's medical issues to be less severe than he claims. First, the medical records obtained from the Bureau of Prisons show that he is in good health, his

---

[1] Burton does not argue age under subsection (B), nor could he because he is not over age sixty-five, nor does he argue the "family circumstances" reasons of subsection (C) for "the death or incapacitation of the caregiver of the defendant's minor child or minor children" or [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." USSG § 1B1.13.

[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html

medical conditions are being appropriately managed at the facility, and that Burton himself is not always compliant with his medical care, as he often does not comply with his medication regimen and does not follow dietary rules. Interestingly, since he has been incarcerated, Burton's diabetes has improved (his A1C has decreased from 11.7 to 8.8) and he has lost 19 pounds. Accordingly, it is apparent from the medical records that the facility in which Burton is housed is managing his diabetes and hypertension well, and these conditions are not serious ailments sufficient to justify compassionate release. [3]

Assuming *arguendo*, that Burton's medical condition is severe enough to warrant compassionate release, I must then examine whether a defendant is "a danger to the safety of any other person or to the community." U.S.S.G, § 1B1.13. A review of Burton's record leads to the conclusion that he may well be a danger to the community if released. Burton has six prior adult federal and state criminal convictions, beginning in 1988 and continuing through 2015, including felony drug convictions. He has spent a significant portion of his adult life in prison or under supervision and has made zero efforts to become a law-abiding citizen. Based upon Burton's history, he may indeed be a danger to the community if he is released; therefore, I cannot authorize his compassionate release from prison at this time.

Assuming *arguendo*, that Burton's medical condition is serious and that he would not be a danger to the community, I will also examine the factors set forth in 18 U.S.C. § 3553(a) that must be analyzed in crafting a proper sentence for a defendant. This section requires me to determine, *inter alia*, whether the sentence served by Burton reflects the

---

[3] I note several of my colleagues have recently granted compassionate release to inmates suffering from both diabetes and hypertension, similar to Burton. However, in each of those cases, the inmate has served a much more significant portion of their sentence than Burton, as discussed below. Therefore, those cases are distinguishable from the instant matter. See *United States v. Pabon*, 2020 WL 2112265 (E.D. Pa., May 4, 2020) (Defendant served 14 months of a 46 month sentence); *United States v. Ladson*, 2020 WL 3412574 (E.D. Pa., June 22, 2020) (Defendant served 15 years on a 20 year sentence); *United States v. Rodriguez*, 2020 WL 1627331 (E.D. Pa., Apr. 1, 2020) (Defendant served 17 years of a 20 year sentence).

seriousness of the offense, promotes respect for the law, and provides just punishment for the offense and affords adequate deterrence to criminal conduct. 18 U.S.C. § 3553 (a)(2)(A). If Burton were released from confinement at this time, he would have served approximately 16 months of a 120-month sentence for a serious drug crime. Examination of the § 3553 factors leads me to the conclusion that releasing Burton after having served less than 15% of his sentence would hardly reflect the seriousness of his offense nor provide just punishment for same. In addition, a sentence this insignificant for such a serious drug crime would not afford adequate deterrence to the potential criminal conduct of Burton in the future, or to others who may be considering similar crimes. Therefore, I will not order Burton's compassionate release.

Burton also argues that he qualifies for compassionate release under section D of the policy, called the "catch-all provision," which states that compassionate release may be granted if, as "determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13. However, even if Burton met the catch-all provision, he would still pose a danger to the community if released. Accordingly, there is no need for me to analyze this provision, and I will not do so at this time.[4]

---

[4] Burton also moves for early release to home confinement under the CARES Act. It is true that the CARES Act "expands the power of the Bureau of Prisons to 'place a prisoner in home confinement' as an alternative to compassionate release in response to the COVID-19 emergency." *United States v. Alam*, 2020 WL 2845694, at *5 (6th Cir. June 2, 2020). However, the CARES Act does "not give courts control over an inmate's place of incarceration or the BOP's exercise of its placement authority." *United States v. Torres*, 2020 WL 3498156, at *6 (E.D. Pa., June 29, 2020), citing *United States v. Delacruz*, 2020 WL 3405723, at *5 (collecting cases). *See also, United States v. Cruz*, 2020 WL 1904476, at *4 (M.D. Pa. Apr. 17, 2020); *United States v. Komoroski*, 2020 WL 3265459, at *10 (M.D. Pa. June 17, 2020); *United States v. Mansaray*, 2020 WL 3077184, at *3 (E.D. Pa. June 10, 2020). Accordingly, this Court lacks authority to transfer Burton to home confinement under the CARES Act, and Burton's motion for release to home confinement under this Act is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's numerous motions for compassionate release are denied.