IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION<br>NO. 15-474-3 |
| v. | CIVIL ACTION<br>NO. 19-4397 |
| RICHARD PERNELL BURTON, JR. | |

## MEMORANDUM OPINION

**Schmehl, J.**   */s/JLS*                                                                                      November 17, 2021

Before the Court is Defendant Burton's *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, as well as numerous amendments and declarations in support. In response to Burton's motion, the Government filed a motion to dismiss, arguing that Burton waived his right to present a collateral challenge to his conviction and sentence pursuant to his plea agreement.

### I.    STATEMENT OF FACTS

On September 30, 2015, a federal grand jury in the Eastern District of Pennsylvania returned an indictment charging Burton with criminal offenses to which he pled guilty on September 20, 2016. On March 4, 2019, Burton was sentenced. His total offense level under the advisory Sentencing Guidelines was 27, and his criminal history category was IV, thus producing an advisory sentencing range of 120 - 125 months, due to the 120-month mandatory minimum term of imprisonment. Accordingly, I imposed a sentence of 120 months' imprisonment, which was at the bottom of the sentencing range.

On September 23, 2019, Burton filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The government responded on January 21, 2020,

by filing a motion to dismiss Burton's motion, arguing that pursuant to his plea agreement, Burton waived his right to present all claims stated in the motion, and he had not alleged any miscarriage of justice sufficient to overcome that waiver.

## II. LEGAL AUTHORITY

A district court is given discretion in determining whether to hold an evidentiary hearing on a habeas petition under § 2255. See *Gov't of the V. I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). In exercising that discretion, the court must first determine whether the Petitioner's claims, if proven, would entitle him to relief, and then consider whether an evidentiary hearing is needed to determine the truth of the allegations. *See Gov't of the V.I. v. Weatherwax*, 20 F.3d 572, 574 (3d Cir. 1994). Accordingly, a district court may summarily dismiss a motion brought under § 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'" *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (quoting *U.S. v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992)).

In his guilty plea agreement, Burton agreed that, with very limited exceptions, he would neither appeal nor present any collateral challenge to his conviction or sentence. *See* Docket No. 157, Exh. A. Specifically, the appellate waiver in the plea agreement stated:

> 12. In exchange for the promises made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.
>
> a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

    b. If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only a claim:

        (1) that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 3 above [a reference to paragraph 3 of the plea agreement];

        (2) challenging a decision by the sentencing judge to impose an "upward departure" pursuant to the Sentencing Guidelines;

        (3) challenging a decision by the sentencing judge to impose an "upward variance" above the final Sentencing Guideline range determined by the Court; and

        (4) that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel. If the defendant does appeal or seek collateral relief pursuant to this subparagraph, no issue may be presented by the defendant in such a proceeding other than those described in this subparagraph.

    13. The defendant acknowledges that filing an appeal or any collateral attack waived in the preceding paragraph may constitute a breach of this plea agreement. The government promises that it will not declare a breach of the plea agreement on this basis based on the mere filing of a notice of appeal, but may do so only after the defendant or his counsel thereafter states, either orally or in writing, a determination to proceed with an appeal or collateral attack raising an issue the government deems barred by the waiver. The parties acknowledge that the filing and pursuit of an appeal constitutes a breach only if a court determines that the appeal does not present an issue that a judge may reasonably conclude is permitted by an exception to the waiver stated in the preceding paragraph or constitutes a "miscarriage of justice" as that term is defined in applicable law.

Docket No. 157, Exh. A. Despite his acceptance of the appeal waiver contained in his plea agreement, Burton brought the instant motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.

3

### III. DISCUSSION

#### A. Government's Motion to Dismiss

The government argues that Burton's 2255 motion should be dismissed due to the above-quoted appeal waiver. Our Court of Appeals has held that a collateral review waiver is enforceable if: (1) the claims the defendant raises on collateral review fall within the scope of the waiver and (2) the defendant knowingly and voluntarily agreed to the waiver, unless (3) enforcing the waiver would result in a miscarriage of justice. *United States v. Grimes*, 739 F.3d 125, 128–29 (3d Cir.2014); *United States v. Mabry*, 536 F.3d 231, 237 (3d Cir.2008). Upon a motion for dismissal based on a waiver of the right to collateral review, this Court's first task is to assure that the waiver was entered knowingly and voluntarily. *See United States v. Mabry*, 536 F.3d 231, 237-38 (3d Cir. 2008).

#### 1. Burton's Waiver was Knowing and Voluntary

The first issue to address is whether "the district court 'inform[ed] the defendant of, and determine[d] that the defendant underst[ood] . . . the terms of any plea agreement provision waiving the right to appeal or to collaterally attack the sentence' as Federal Rule of Criminal Procedure 11(b)(1)(N) requires." *Id.* at 239 (bracketed material and ellipsis in original). In the instant matter, the Court had the following exchange with Burton during his guilty plea colloquoy:

> Q: All right. So in other words part of the plea agreement means that you have waived most of your appeal rights. You can only appeal if the Government appeals or you could appeal if my sentence would exceed the statutory maximum, which would be pretty hard to do in this case, I make an improper departure in the guidelines in your sentence, or I sentence you above the final sentencing guideline range and my sentence is unreasonable. Do you understand that?

4

> A: Yes, sir.
>
> Q: Furthermore, you can file a petition under Section 2255 arguing that your attorney did not provide you effective assistance of counsel if there would be facts that warrant that. Do you understand that?
>
> A: Yes, sir.
>
> Q: So generally your appeal rights are limited as long as, you know, I follow the law and I follow the guidelines and I sentence you reasonably there's no appeal. Do you understand that?
>
> A: Yes, sir.
>
> A: Absolutely.
>
> Q: So you can see when I say that for all practical purposes, you have very -- you have basically waived your rights with very limited exceptions to appeal, do you understand that?
>
> A: I do.

Docket No. 157, Exh. B, pp. 15-16. Clearly, a review of the transcript of the guilty plea colloquoy in this matter demonstrates that Burton's appeal waiver was knowing and voluntary. The Court carefully inquired as to his understanding of the terms of his plea agreement generally, and more specifically the appeal waiver. As reflected in the record, Burton clearly and competently expressed his understanding of both the agreement and the waiver.

Despite the record reflecting evidence to the contrary, Burton asserts that his plea was not knowing and voluntary. He claims that he was not aware that the evidence was insufficient to support the conspiracy count of his conviction and that his attorney failed to inform him of these alleged deficiencies. However, the record does not support Burton's allegations. During his plea colloquoy, the Court confirmed that he had sufficient time to consult with his attorney regarding the charges, and Burton confirmed

5

that he was satisfied with his attorney's representation. Specifically, our exchange was as follows:

> Q: Now, has Mr. Maynard gone over the charges that the Government has filed against you and fully explained to you your rights to go to trial and any defenses that that you could bring towards those charges?
>
> A: Yes, sir.
>
> Q: And did you voluntarily sign the plea agreement and the acknowledgment of rights?
>
> A: Yes, sir.
>
> Q: All right. Who – does somebody have the original or a copy? Can we just show that to him and ask him if that is in fact his signature on the document that Mr. Maynard is showing you?
>
> A: Yes, sir.
>
> Q: All right. And did you and Mr. Maynard go over that and did he fully explain what that means to you?
>
> A: Yes, sir.
>
> Q: Do you feel you've had enough time to go over it with him?
>
> A: Yes, sir.
>
> Q: So far has Mr. Maynard done everything that you've asked him to do?
>
> A: I have no problems.
>
> Q: Okay. I just mean that if there's something you said I want to do and he said I'm not going to do it or –
>
> A: Oh.
>
> Q: -- I can't do that or anything like that.
>
> A: No, sir.
>
> Q: All right. I mean I understand there's only so much he can do in a case and you understand that too, right?

> A: Yes, sir.

Docket No. 157, Ex. B, pp. 5-6. Further, at the plea hearing, the government was asked to state the elements of the charges and the Court confirmed that Burton understood them.

> Q: All right. Mr. Burton, do you understand the elements of those offenses?
>
> A: Yeah. The only thing that I don't understand is like –
>
> (The record reflected Burton conferred with counsel).
> Mr. Maynard: Thank you, Your Honor. My client had a question about the conspiracy and the amount, which I explained to him.
>
> Q: Okay. So in other words Count 1 is conspiracy to distribute a controlled substance, and that controlled substance is more than five kilograms if a substance containing a detectable amount of cocaine. Counts 4, 5, 7 and 16 are manufacture, and Counts 6, 11, and 14 are possession with intent to distribute. So there are only three different types of crimes, but there's different counts to the manufacturing and the possession with the intent to deliver, or as we call PWI. Do you understand that?
>
> A: Yes, sir.

Docket No. 157, Ex. B, pp. 19-21. The Court further had the government summarize the facts that it would have been required to prove had Burton's case gone to trial for each count in the indictment. Burton admitted to the facts as summarized by the government.

> Q. All right. Mr. Burton, do you fully admit to the facts as stated by the Assistant United States Attorney?
>
> A. I mean if that's what they say. I don't know dates, times, or whatever the situation, if that's what they say. I don't recall or you know, know the times and dates what they got.
>
> Q. All right. Was there anything he said that wasn't true?
>
> A. A fact of me delivering 28 grams to somebody. I don't recall nothing like that.
>
> Government counsel: Your Honor, I think that was in reference to directions of Mr. Robinson if I remember correctly.

>The Court: It said through Mr. Robinson.
>
>Government counsel: Through Mr. Robinson. So he didn't deliver it to the other person, you cooked it.
>
>A: Oh.
>
>Q: -- and then allegedly gave it back to Mr. Robinson who went ahead and delivered it.
>
>A: Oh.
>
>Q: Right. Now do you remember that?
>
>A: Probably, your Honor, but yeah.
>
>Q. Well you're here to plead guilty so you have to admit to the –
>
>A. Yeah, yeah.
>
>Q. -- facts as stated by the Government.
>
>A: Yes, sir.
>
>Q. So I mean I understand that if you say I can't remember the exact day I did it –
>
>A. Yeah.
>
>Q. -- but are the facts as stated by Mr. Nair correct?
>
>A: Yes, sir.

Docket No. 157, Ex. B, pp. 24-25. After this colloquoy, Burton pled guilty to all charges, including the conspiracy charge with which he now takes issue.

Burton's claims are refuted by the record in this case. During the colloquoy, the Court confirmed that he had sufficient time to consult with his attorney regarding the charges and the guilty plea, and that he was satisfied with his attorney's representation and that his attorney had done everything he wanted. Burton clearly understood the ramifications of his guilty plea and cannot establish that the plea agreement and thus the

8

appellate waiver were not knowing and voluntary. Accordingly, the appellate waiver should be enforced, unless Burton can show a miscarriage of justice.

### 2. There Was No Miscarriage of Justice

As discussed above, Burton clearly entered into the wavier knowingly and voluntarily. Accordingly, that waiver will be enforced unless Burton can prove a miscarriage of justice would result. *See United States v. Khattak*, 273 F.3d 557, 562 (3d Cir. 2001) (finding that waivers of appeal are enforceable but observing that "[t]here may be an unusual circumstance where an error amounting to a miscarriage of justice may invalidate the waiver."); *see also United States v. Gwinnett*, 483 F.3d 200 (3d Cir. 2007).

The Third Circuit has never provided a definitive list of situations which would amount to a "miscarriage of justice." Rather, *Khattak* stated that a reviewing court should evaluate appellate waivers case-by-case, considering the error claimed by the defendant and such factors as "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." 273 F.3d at 563 *(quoting United States v. Teeter*, 257 F.3d 14, 25-26 (1st Cir. 2001)).

The "miscarriage of justice" exception is quite narrow. It "will be applied sparingly and without undue generosity," *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005) (*quoting Teeter*, 257 F.3d at 26), only where "manifest injustice" would result by enforcing the appellate waiver, *Gwinnett*, 483 F.3d at 206. Adopting the view of other Circuits, the Third Circuit stated in *Khattak*:

> [B]y waiving the right to appeal, a defendant necessarily waives the opportunity to challenge the sentence imposed, regardless of the merits. As the Court of Appeals for the Eleventh Circuit explained:
>
>> A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues – indeed it includes a waiver of the right to appeal blatant error. Waiver would be nearly meaningless if it included only those appeals that border on the frivolous. . . . While it may appear unjust to allow criminal defendants to bargain away meritorious appeals, such is the necessary consequence of a system in which the right to appeal may be freely traded. [*United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999)]; *see also United States v. Wenger*, 58 F.3d 280, 282 (7th Cir.1995) ("Defendants who appeal from sentences following plea agreements always point to unanticipated and unwelcome developments. . . . To say that a waiver of appeal is effective if and only if the defendant lacks grounds . . . is to say that waivers will not be honored.").

273 F.3d at 561-62.

In *United States v. Mabry*, the Third Circuit enforced a waiver of the right to collateral review of the claim that defense counsel was ineffective in failing to file an appeal. "The issues Mabry seeks to raise on appeal are insubstantial and clearly encompassed by the broad waiver. They do not implicate fundamental rights or constitutional principles. The District Court's conclusion - that the purportedly appealable issues are not substantial and fall clearly within the terms of the waiver - is correct." *Mabry*, 536 F.3d at 243.

To date, the Third Circuit has identified only limited circumstances that present a miscarriage of justice permitting a collateral challenge to proceed despite the waiver. The Court has stated that an appellate waiver may not be enforced if the defendant did not understand the plea agreement itself due to ineffective assistance of counsel, *United States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007); if counsel was ineffective in failing to timely file an appeal raising an issue explicitly exempted from the appellate waiver

10

provision, *Id.*; or if the government breached its own obligations under the plea agreement, *United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008).

In the instant matter, no facts exist that would show Burton's counsel was ineffective for failing to file an appeal or that the government breached its own obligations under the plea agreement. Burton argues his attorney was ineffective at sentencing because of failing to raise the First Step Act that he claims would have resulted in a lower sentence and should have allowed him to withdraw his plea. Burton also argues that he would not have pled guilty to the conspiracy charge, but for the threat of an 851 information. The Court will examine Burton's two arguments under the ineffective assistance of counsel standard to determine whether a miscarriage of justice could have occurred that would justify non-enforcement of the appellate waiver.

The Supreme Court's two-part test in *Strickland v. Washington* governs claims for ineffective assistance of counsel. 466 U.S. 668 (1984). "To succeed on such a claim, the petitioner must demonstrate (1) that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) that the petitioner suffered prejudice as a result of the deficiency." *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687)).

With respect to *Strickland's* first prong, there is a "strong presumption" that counsel's performance was not deficient. *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Where "the record does not explicitly disclose trial counsel's actual strategy or lack thereof (either due to lack of diligence on the part of the petitioner or due to the unavailability of

11

counsel), the presumption may only be rebutted through a showing that no sound strategy . . . could have supported the conduct." *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005).

With respect to prejudice, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To make this showing, the "[d]efendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Therefore, to establish ineffective assistance, the defendant must prove both deficient performance and prejudice. *Strickland* at 688. If the defendant does not make a showing under both prongs, it cannot be said that his conviction or sentence resulted from a breakdown in the adversary process that would render the result unfair or unreliable. *Id*.

Counsel is afforded significant deference to make decisions without fear of judicial second guessing. *Id.* For this reason, it is "only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989); *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999).

First, Burton has failed to point to anything in the First Step Act that would apply to him in this case. He sets out no discussion of how the First Step Act would have affected his potential sentence, nor any facts that show the First Step Act would be applicable. Further, if there was an agreement to not file an 851 information, it would

have been stated within the plea agreement. A review of Burton's plea agreement shows no such understanding. Clearly, there is no conduct here on the part of Burton's attorney that would rise to the level of deficient performance so as to satisfy the first prong under Strickland.

Nor can Burton satisfy the prejudice prong for any of his ineffective assistance of counsel claims. Burton cannot prove that but for the alleged errors of his attorney, the result of the proceeding would have been different. Burton's alleged errors are unsupported by the facts and do not lead to a reasonable probability of a different outcome. Therefore, Burton cannot show ineffective assistance of counsel sufficient to overcome the appellate waiver to which he knowingly agreed.

3. **No Exception to the Waiver Applies**

An exception to the appellate waiver exists in the case where a defendant claims his or her attorney provided constitutionally ineffective assistance during the execution of the plea agreement and the entry of the guilty plea. As was discussed thoroughly above, Burton's counsel did not provide ineffective assistance. Burton's claims here are clearly encompassed by the broad waiver, and no exception to the waiver would apply in this matter. Therefore, the government's motion to dismiss must be granted, as Burton waived his right to file an appeal.

IV. **CONCLUSION**

For the foregoing reasons, the government's motion to dismiss Burton's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 is granted and Burton's motion is dismissed.