IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

RICHARD PERNELL BURTON, JR.

CRIMINAL
NO. 15-474-3

**MEMORANDUM OPINION**

**Schmehl, J.**  /s/JLS                                                                 July 9, 2024

Before the Court is Defendant Burton's counseled Supplemental Motion to Reduce Sentence and counseled Second Supplemental Motion to Reduce Sentence. Both motions seek compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The Government has filed responses, and Defendant's motions are ready for decision.[1]

I.   **STATEMENT OF FACTS**

Defendant Richard Pernell Burton, Jr. has continuously been subject to court supervision because of six federal and state criminal convictions, beginning in 1988 and continuing through 2015, including felony drug convictions. On September 30, 2015, a federal grand jury in the Eastern District of Pennsylvania returned an indictment charging Burton with criminal offenses to which he pled guilty on September 20, 2016. On March 4, 2019, Burton was sentenced. His total offense level under the advisory Sentencing Guidelines was 27, and his criminal history category was IV, thus producing an advisory sentencing range of 120 - 125 months, because of the 120-month mandatory minimum

---

[1] I note that Burton has filed numerous repetitive *pro se* motions requesting release. As I appointed counsel for Defendant for the purpose of requesting a reduction in sentence (ECF No. 233), his *pro se* motions will be denied.

term of imprisonment. Accordingly, I imposed a sentence of 120 months' imprisonment, which was at the bottom of the sentencing range. Burton is serving his sentence at FMC Butner with an anticipated release date of October 24, 2027.

Burton's 2020 request for compassionate release was based upon his diagnoses of type 2 diabetes, sleep apnea and use of a C-Pap machine, multiple lung nodules, two herniated discs, a repaired hernia, a gastric ulcer, hearing loss in the left ear, anemia, high cholesterol, high blood pressure, diverticulitis and post-traumatic stress disorder due to serving in the Libyan War and years of incarceration. On July 23, 2020, I denied Burton's request for compassionate release.

On April 8, 2022, Burton made a new request to the warden for compassionate release based on a diagnosis of stage 3 colon cancer. The warden denied the request on April 19, 2022, after finding that Burton did not have a terminal condition with a life expectancy of less than 18 months. The warden also found that Burton was independent with his self-care. Thereafter, his counsel filed a Supplemental Motion for Compassionate Release on September 27, 2022, then a second Supplemental Motion on April 17, 2024. These supplemental motions requested compassionate release due to the above physical and mental ailments, as well as stage III colon cancer and renal cysts.

Along with the response to his motions, the Government also provided Burton's medical records from the Bureau of Prisons, which show that Burton was diagnosed with likely colon cancer in November of 2021. He had surgery in January of 2022 to remove the cancerous portions of his colon, with two follow-up surgeries in February and March of 2022 when infections developed. After the surgery for colon cancer, in the spring of 2022, Burton received chemotherapy treatment, which was completed on June 17, 2022.

When the colon cancer was detected in late 2021, there was an incidental finding of a lesion on Burton's right kidney. In February of 2022, the treating physicians for his colon cancer suggested further evaluation of Burton's kidneys with an MRI scan both with and without contrast. In April of 2022, a request was made for a urology consultation in May of 2022 to assess the kidney lesion for further management. Because Burton had a history of an allergic reaction to the CT contrast, BOP radiology recommended, in July of 2022, an MRI instead of the CT with contrast. However, at his August 4, 2022, visit to the Duke Cancer Center, his treating physician there again ordered the CT scan with contrast as necessary to fully evaluate his kidneys. The scan with contrast was completed and Burton had a full evaluation at the Duke Cancer Center on September 15, 2022.

At the September 15, 2022, visit to the Duke Cancer Center, Burton's treating physician explained that the scan showed a lesion that was compatible with a renal cell carcinoma. After the treatment options were presented to him, Burton chose to proceed with a cryoablation procedure. The plan was for Burton to have a repeat scan three months after the cryoablation procedure, and then to be monitored with annual scans for five years to ensure no evidence of tumor recurrence or new disease. The scan that was done to evaluate the lesion on his kidney did not show any evidence of metastatic disease in his abdomen or pelvis, and no new suspicious kidney lesions.

Burton's cryoablation procedure took place in February of 2023, and he was seen by a BOP in-house urologist at Butner on November 17, 2023. (ECF No. 276, p. 300.) Burton was seen again by the BOP urologist on December 6, 2023, when the doctor scheduled a CT scan of the abdomen and pelvis with a target date of September 6, 2024.

(ECF No. 276, p. 44.) Subsequently, Burton had a urology consult at Duke Medical on January 24, 2024, because of the renal mass. (*Id.*, pp. 30, 276-283, 286.) The report from that consult stated that the plan was to see Burton again in August of 2024 for a same-day CT scan. (*Id.*, p. 280). On February 5, 2024, the records from Duke Medical were reviewed with Burton, and he was told that he would have a repeat renal scan in August 2024 with a follow up visit to Duke Urology. (*Id.*, p. 27.) Also, Burton had an abdominal/pelvic CT scan on April 1, 2024. (*Id.*, p. 257.)

## II.     LEGAL AUTHORITY

Generally, a district court may not modify a defendant's sentence after it has been imposed. 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 825, (2010). However, the First Step Act provides for a compassionate release exception to that general rule, stating that: (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf [2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction; and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.] 18 U.S.C. § 3582(c)(1)(A); see also U.S.S.G. §

---

[2] There is no dispute here that Burton has exhausted his administrative rights.

4

1B1.13 (stating that the court may reduce a term of imprisonment if it finds, after consideration of the factors in § 3553(a), that "[e]xtraordinary and compelling reasons warrant the reduction," "[t]he defendant is not a danger to the safety of any other person or to the community," and "[t]he reduction is consistent with this policy statement").

Although neither U.S.S.G. § 1B1.13 nor Congress defines the term "extraordinary and compelling," the Sentencing Commission's commentary to § 1B1.13, provides guidance. See U.S.S.G. § 1B1.13 cmt. n.1. The commentary provides that extraordinary and compelling reasons exist for a reduction in sentence if the defendant is (1) suffering from a terminal illness; or "suffering from a serious physical or medical condition or . . . experiencing deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care" in prison and "from which he or she is not expected to recover;" (2) the defendant's advancing age (over 65), in combination with a serious deterioration of his health and his successful completion of at least 10 years or 75% of his sentence; (3) the defendant's family circumstances, and (4) "[o]ther [r]easons ... [a]s determined by the Director of the Bureau of Prisons" to be extraordinary and compelling, either alone or in combination with the three prior reasons. U.S.S.G. § 1B1.13, cmt. n.1. These factors, while not conclusive, may serve as a guide to the Court's decision. *United States v. Andrews*, 12 F.4th 255, 260 (3rd Cir. 2021). In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019); *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019).

5

Further, if a defendant's medical condition is found to be a serious ailment, a court must then analyze the factors under section 3553(a) and the Sentencing Commission's policy statement. Section 3582(c)(1)(A) requires a court to consider the "factors set forth in section 3553(a) to the extent they are applicable" before a sentence may be reduced. These factors require a determination of whether the sentence served "reflect[s] the nature and circumstances of the offense and the history and characteristics of the defendant;" "reflect[s] the seriousness of the offense;" "promote[s] respect of the law;" and "afford[s] adequate deterrence to criminal conduct." The statute also instructs a court to consider the Sentencing Commission's policy statement, which allows a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.

### III. DISCUSSION

Burton argues that his medical conditions present a serious ailment which results in an "extraordinary and compelling" reason for his release from incarceration. Specifically, his first supplemental motion focuses on his recent colon cancer diagnosis and prognosis, while his second supplemental motion focuses on Burton's colon cancer, renal cyst and his need for periodic and consistent follow-up treatments and testing. I will analyze his motions under section (A) of the Sentencing Guidelines policy statement set forth above.

Burton's primary argument is that he should be released due to his colon cancer diagnosis since the time of his first compassionate release denial, as well as the BOP's allegedly inconsistent treatment of his renal mass. Burton also asserts that the symptoms of his physical ailments and the side effects of the treatment for said ailments significantly

impact his ability to complete several activities of daily living, specifically ambulating, feeding and personal hygiene. (ECF No. 234, p. 9.)

However, a review of the medical records obtained from the Bureau of Prisons does not support Burton's allegations. The records reveal that Burton was, indeed, diagnosed with colon cancer, but that he has already been treated both with surgery and chemotherapy and that at this time, Burton's colon cancer is in remission. During the chemotherapy, Burton had some pain and side effects but seemed to be doing fairly well by the time he got to the final round and he completed the chemotherapy on June 17, 2022. (ECF No. 276, pp. 56, 58, 63, 686.) In July of 2022, he reported having some continuing muscle pain from the chemotherapy but said he wanted to leave the medical facility and return to his previous institution. (ECF No. 276, p. 45.) At his August 8, 2022, medical visit, Burton said, "I'm feeling good." His physician noted, "Pleasingly he has no signs or symptoms to indicate a recurrent/residual disease." The physician found that there should be repeat tests including a scan and colonoscopy to monitor his colon cancer. (*Id*., p. 19.) Although Burton assets that he has severe body ache and difficulty breathing, (ECF No. 234, p. 5), the medical records do not support that assertion. He notes that he had fatigue and nausea from the chemotherapy, see *id.*, pp. 7-8, but that treatment was completed on June 17, 2022. He asserts that the treatment for his physical ailments has significantly impacted his ADLs. But here too, the medical records do not support that claim, as all that Burton reported in July of 2022 after his chemotherapy was some continuing muscle pain, and in August of 2022, he said he was feeling good.

After the mass was found on Burton's kidneys, the recommended cryoablation procedure was successfully completed in February 2023. Burton was then seen by the in-

house urologist on November 17, 2023, and was given a target date in September 2024 for a repeat renal CT scan. While it is true that his November 6, 2023, appointment at Duke Medical had to be rescheduled, it is not accurate, as Burton claims, that he has not yet had a urology consult at Duke Medical. Burton had a urology consult at Duke Medical on January 24, 2024, because of his renal mass and was told he would have a repeat renal scan in August 2024 with a follow up visit to Duke Urology. Burton also had an abdominal/pelvic CT scan on April 1, 2024.

Accordingly, it is apparent from the medical records that Burton has received extensive and thus far successful treatment from doctors at Butner and in the medical community. Burton does not have a terminal condition with a life expectancy of less than 18 months, is fully ambulatory, is currently independent with his ADLs and is able to provide self-care. Further, the facility in which he is housed has appropriately followed up on his colon cancer and kidney cysts and has seen to it that he receives appropriate treatment. Therefore, Burton's motion for compassionate release is unsupported by the medical records and must be denied at this time, as he does not present an extraordinary and compelling reason for release.[3] If further critical medical information arises from the scans performed in the Fall of 2024, Burton may again raise his request.

### IV.  CONCLUSION

For now and for all of the foregoing reasons, Burton's numerous motions for compassionate release are denied.

---

[3] As Burton has clearly failed to present an extraordinary and compelling reason for a reduction in his sentence, it is unnecessary for me to examine whether he is a danger to the community, or to discuss the factors set forth in 18 U.S.C. § 3553(a).